Jacob L. Houmand, Esq. (NV Bar No. 12781)
Email: jhoumand@houmandlaw.com
Bradley G. Sims, Esq. (NV Bar No. 11713)
Email: bsims@houmandlaw.com
HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240
Las Vegas, NV 89148
Telephone:    702/720-3370
Facsimile:    702/720-3371

*Counsel for Ryan A. Andersen, Chapter 7 Trustee*

*Electronically Filed On: August 4, 2023*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>AFFINITYLIFESTYLES.COM, INC., REAL WATER, INC., and REAL WATER OF TENNESSEE, LLC,<br><br>Debtors. | Case No. BK-S-21-14099-NMC<br>Case No. BK-S-21-14101-NMC<br>Case No. BK-S-21-14102-NMC<br><br>Chapter 7 |
| RYAN A. ANDERSEN, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>ORION GALLAGHER, a minor child, individually; BRYAN GALLAGHER, as Guardian Ad Litem of ORION GALLAGHER; CAMILLE GALLAGHER, as Guardian ad Litem of ORION GALLAGHER; KEITH HALEY, individually JEREME BOTIZ, individually; JAMES HU, individually; RICHARD BELSKY, individually; YVONNE ARNONE, individually; PATRICIA SUTHERLAND, as heir of KATHLEEN MUSTAIN RYERSON, deceased; RICHARD RYERSON, as heir of KATHLEEN MUSTAIN RYERSON, deceased; JUDITH RYERSON, in her capacity as Special Administratix of the Estate of KATHLEEN RYERSON (DECEDENT) and as heir of KATHLEEN MUSTAIN RYERSON, deceased; | Adv. Proc. No. 23-01112-NMC<br><br>**MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 105(a) AND FRBP 7065 ENJOINING THE PROSECUTION OF CERTAIN LAWSUITS**<br><br>Date of Hearing:    OST REQUESTED<br>Time of Hearing:    OST REQUESTED<br>Place: Courtroom No. 3, Third Floor<br>Foley Federal Building<br>300 Las Vegas Blvd., S.<br>Las Vegas, NV 89101<br><br>Judge:  Honorable Natalie M. Cox |

-1-

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

UNITED NATURAL FOODS WEST, INC., a California Corporation; HANNA INSTRUMENTS, INC., a Rhode Island Corporation; MILWAUKEE INSTRUMENTS, INC., a North Carolina corporation;

Defendants.

Ryan A. Andersen (alternatively, the "Plaintiff" or "Trustee"), the duly appointed Chapter 7 Trustee in the above-captioned bankruptcy case, by and through his counsel, Jacob L. Houmand, Esq. and Bradley G. Sims, Esq. of the Houmand Law Firm, Ltd., hereby submits this *Motion For Entry of an Order Pursuant to 11 U.S.C. § 105(a) and FRBP 7065 Enjoining the Prosecution of Certain Lawsuits* (the "Motion").

The Motion is based on the following Memorandum of Points and Authorities and the *Declaration of Ryan A. Andersen In Support of the Motion For Entry of an Order Pursuant to 11 U.S.C. § 105(a) and FRBP 7065 Enjoining the Prosecution of Certain Lawsuits* (the "Trustee Declaration"), which is filed separately and concurrently with this Court pursuant to Local Rule 9014(c)(2). The Motion is also based on the pleadings and papers on file herein, and any argument that may be entertained at the hearing on the Motion.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This Motion concerns a request by the Trustee for a temporary restraining order enjoining the defendants in the above captioned adversary proceeding (collectively, the "Defendants") from prosecuting a state court case currently pending in Eighth Judicial District Court, Clark County Nevada, Case No. A-21-834485-B (the "Litigation") against certain insurance carriers (the "Settling Insurers") that have entered into a settlement agreement (the "Settlement Agreement") with the Trustee. The Settlement Agreement is the subject of the *Motion to (1) Approve*

---

[1] The Trustee also requests that the Court take judicial notice of all pleadings filed in the above-referenced bankruptcy case, including adversary proceedings, pursuant to Federal Rule of Evidence 201, incorporated by reference by FRBP 9017.

-2-
DM1\14363779.1

*Compromise Pursuant to Federal Rule of Bankruptcy Procedure 9019; (2) Approve the Sale Of Insurance Policies Free And Clear of All Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. § 363; (3) Enter a Supplemental Injunction Pursuant to 11 U.S.C. §§ 363 and 105(a); (4) Approve Claim Distribution Procedures; and (5) Approve Proof Of Claim Form And Procedures* (the "Compromise Motion") that is scheduled for a hearing on August 29, 2023, at 2:00 p.m.

The Trustee has filed the instant action against the Defendants seeking a preliminary injunction enjoining the Defendants from proceeding in the Litigation pending the outcome of the Compromise Motion. The Settlement Agreement resolves the Consolidated Debtors' claims for insurance coverage from insurance policies issued by the Settling Insurers (the "Subject Policies") for tort claims against the Consolidated Debtors and, pursuant to which, the Settling Insurers will buy back the Subject Policies free and clear of all claims and interests. Those tort claims are being pursued in state court by certain claimants, inclusive of some or all of the Defendants, against the Consolidated Debtors. The continued prosecution of the Litigation places the most significant asset of the Consolidated Debtors' Bankruptcy Estate (the "Estate") in jeopardy, and will likely exhaust any and all coverage under the Subject Policies, to the detriment of the Consolidated Debtors' other creditors.

In order to prevent the dissipation of the proceeds under Subject Policies and to allow for an equitable distribution of these proceeds, the Trustee now seeks a Temporary Restraining Order restraining the Defendants from continued prosecution of the Litigation for a brief period until the Court enters a final order on the Compromise Motion. The relief sought by this Motion is necessary to protect the equality of distribution of Estate assets among creditors, a Congressionally-mandated and controlling bankruptcy law policy and public policy long recognized by the U.S. Supreme Court. *See*, Report of the Commission on the Bankruptcy Laws of the United States, H. R. Doc. No. 137, 93rd Cong., 1st Sess., Part I, 68-83 (1973) (the "Report"). In the Report, Congress identified as the following internal goals of the Bankruptcy Code:

-3-

DM1\14363779.1

>     (1) open access of **both debtor and creditor** to the bankruptcy process;
>
>     (2) **fair and equitable treatment of creditors' claims**; . . .
>
>     (4) efficient and economical case administration;
>
>     (5) deterrence and sanctions against fraud and other dishonest conduct; and
>
>     (6) production of information concerning the outcomes and effects of bankruptcy cases.

Report, Part I at 75 - 83 (1973) (emphasis added).[2]

Equality of distribution is the theme of the Bankruptcy Code and a prime bankruptcy policy. *See Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 61 S. Ct. 904, 85 L. Ed. 1293 (1941); H. Rept. No. 95-595, p. 178. *In re Wade*, 523 B.R. 594, 605 (Bankr. WD Tenn 2014) most recently made clear the continued viability of this controlling policy:

> [T]he policy behind this exclusive jurisdiction, wherever located (over property of the estate), is to assure than all property of a title 11 debtor and claims against a debtor are resolved in centralized and orderly proceedings **to assure . . . among other things, a fair and equitable distribution and treatment among the debtor's creditors.** [Emphasis Added.]

*Id.* at 605. See, also, *Burlingham v. Crouse*, 228 U.S. 459, 473, 33 S.Ct. 564, 57 L.Ed. 920 (1913); *Stellwagen v. Clum*, 245 U.S. 605, 617, 38 S.Ct. 215, 62 L.Ed. 507 (1918); *Kokoszka v. Belford*, 417 U.S. 642, 645–46, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974).

This law has been importantly applied in multi-injury or "mass tort" cases where assets to distribute are limited and the class liability is larger than the assets. For example, in *In Re Celotex Corporation*, 204 B.R. 586 (Bankr. M.D. Fla 1996):

> The Court has the power under the principles of equity to disallow

---

[2] Both external and internal goals of bankruptcy are included in the Report, complete with substantive analysis of bankruptcy policy and a proposed new Bankruptcy Code. The "external" goals are the values involved in the "open credit economy," a term used to refer to the role of private credit generally in the economy of the United States. Report at p. 68; see Kenneth N. Klee, Legislative History of the New Bankruptcy Law, 28 DePaul L. Rev. 941, 942-943 (1978). The Report states that internal goals should prevail in instances of conflict with external goals. Report at p. 75.

-4-

DM1\14363779.1

claims for punitive damages. The Trust cannot compensate holders of Asbestos Claims for punitive damages and still treat all similar Claims equitably. Consequently, payment of punitive damages would prevent the fair and equitable treatment of the holders of Asbestos Claims, would frustrate the fair distribution of the Trust Assets, and would subvert the stated purposes of the Plan and of public policy. [citing *In re Johns–Manville Corp.*, 68 B.R. 618, 627–28 (Bankr.S.D.N.Y.1986), aff'd 78 B.R. 407 (S.D.N.Y.1987), *aff'd sub nom. Kane v. Johns–Manville Corp. (In re Johns Manville Corp.)* 843 F.2d 636 (2d Cir.1988).]

This policy is reflected throughout bankruptcy law as the most important goal of fairness and justice – and the avoidance of preferential payments and fraudulent transfers. The relief sought by this Motion seeks to avoid the dissipation of what may be the Estate's only significant asset to a favored few of its creditors, leaving the vast majority of injured victims with no recovery. In order to preserve the assets of the Estate, and provide for an equitable distribution, the Trustee now seeks a Temporary Restraining Order preventing the continued prosecution of the Litigation pending the outcome of the Compromise Motion.

## II.     JURISDICTION AND VENUE

The Court has jurisdiction over the bankruptcy case and the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The Motion is a core proceeding under 28 U.S.C. § 157(b)(2). Pursuant to Local Rule 9014.2, if the Court determines that absent consent of the parties the Court cannot enter final orders or judgment regarding the Motion consistent with Article III of the United States Constitution, the Trustee consents to entry of final orders and judgment by this Court. Venue before this Court is appropriate under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested in the Motion is FRBP 7065, and 11 U.S.C. § 105(a).

## III.     STATEMENT OF FACTS

1. Prior to the filings of their respective bankruptcy petitions, the Consolidated Debtors produced bottled water.

2. Prior to the filing of the Consolidated Debtors respective bankruptcies, the Consolidated Debtors were issued various insurance policies (the "Subject Policies") by, among

-5-

DM1\14363779.1

others, The Ohio Casualty Insurance Company, Ohio Security Insurance Company, Peerless Indemnity Insurance Company, and West American Insurance Company (collectively, the "Settling Insurers").

3.  Prior to the filing of their respective bankruptcy petitions, the Consolidated Debtors manufactured a product called "Re$^2$al Alkalized Water" ("Real Water").[3]  Real Water was marketed as alkaline water, i.e., water with a pH level above a neutral pH of 7.

4.  On or about June 1, 2021, ALS, RW, and their principals, entered into a Consent Decree of Permanent Injunction ("Consent Decree") in Case No. 21-cv-959-JAD-BNW wherein they agreed to cease the production of bottled water unless and until they met certain conditions.

5.  The Consent Decree alleges that the Real Water produced by ALS, RW and/or its principals (*i.e.*, the defendants in *United States of America v. Affinitylifestyles.com, Inc., et al.*) was "adulterated under 21 U.S.C. § 342(a)(4)".

6.  Further, certain individuals (the "Tort Claimants") have asserted, and additional individuals may assert, claims against the Debtors alleging that they suffered injuries from drinking contaminated Real Water.  Consequently, the Debtors have been sued in numerous underlying actions by the Tort Claimants who have alleged that they suffered injuries as a result of drinking contaminated Real Water ("Tort Claims").  The Tort Claimants further allege that because the Real Water they consumed was unsafe for consumption, it caused the injuries.

7.  The Tort Claimants allege that unsafe Real Water was created by the same alleged flaws in the manufacturing process.

8.  On May 12, 2021, certain of the Defendants initiated suit against one or more of the Consolidated Debtors by filing a complaint in Eighth Judicial District Court, Case No. A-21-834485-B (the "Litigation").

9.  On March 9, 2023, certain of the Defendants filed their *SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL* (the "SAC") in the litigation.

---

[3] Capitalized terms used but not defined herein shall have the meaning set forth in the Settlement Agreement.

-6-

DM1\14363779.1

10. The SAC alleges claims against the Consolidated Debtors for, among other things, Strict Liability – Failure to Warn, Breach of Implied Warranty of Merchantability, Negligence Per Se - Adulterated Product, and Negligence.

11. On August 19, 2021, ALS filed a voluntary bankruptcy petition pursuant to Chapter 7 of Title 11 of the United States Code and commenced the instant bankruptcy case. *See* ALS ECF No. 1.[4]

12. On August 19, 2021, RW filed a voluntary bankruptcy petition pursuant to Chapter 7 of Title 11 of the United States Code and commenced the bankruptcy case captioned *In re Real Water, Inc.* (Case No. 21-14101-NMC). *See* RW ECF No. 1.[5] On August 19, 2021, RWT filed a voluntary bankruptcy petition pursuant to Chapter 7 of Title 11 of the United States Code and commenced the bankruptcy case captioned *In re Real of Tennessee, LLC* (Case Number BK-S-21-14102-NMC). See RWT ECF No. 1.[6]

13. On August 19, 2021, the Trustee was appointed as the Chapter 7 Trustee in ALS's bankruptcy case [ALS ECF No. 3], in RW's bankruptcy case [RW ECF No. 3], and in RWT's bankruptcy case [RWT ECF No. 3].

14. After the filing of the Consolidated Debtors' respective bankruptcies, certain of the Defendants entered into stipulations (the "Stipulations") with the Trustee and the Consolidated Debtors to obtain relief from the automatic stay in order to prosecute claims. The Stipulations provide that the Defendants would not seek recovery from the Estate and would look only to insurance of the Consolidated Debtors to satisfy their claims.

15. On December 2, 2021, the Court entered an *Order Granting Motion for Substantive Consolidation Nunc Pro Tunc As of the Petition Date Pursuant to 11 U.S.C. § 105(a)*

---

[4] All references to "ALS ECF No." are to the numbers assigned to the documents filed in Case No. 21-14099-NMC as they appear on the docket maintained by the clerk of the court.

[5] All references to "RW ECF No." are to the numbers assigned to the documents filed in Case No. 21-14099-NMC as they appear on the docket maintained by the clerk of the court.

[6] All references to "RWT ECF No." are to the numbers assigned to the documents filed in Case No. 21-14099-NMC as they appear on the docket maintained by the clerk of the court.

-7-

DM1\14363779.1

[ALS ECF No. 99].

16. On April 12, 2023, the Settling Insurers initiated an adversary proceeding captioned *Ohio Security Insurance Company, et al. v. Affinitylifestyles.com, Inc. d/b/a Real Water, et al.* (Case Number 23-01082-NMC) ("Adversary Case") in United States Bankruptcy Court by filing a complaint ("Complaint").

17. The Complaint seeks, among other things, a judicial determination that if the damages at issue in the Tort Claims arose from an "occurrence," there was one "occurrence" in total; that the Subject Policies providing coverage during the 2/4/2012- 2/3/2016 policy periods are not implicated by the allegations in the various Tort Claims and, therefore, do not provide coverage for such claims; that the "cooperation clauses" in the Subject Policies were breached and, as a result, the Settling Insurers are released from any further obligations owed under the Subject Policies to the Debtors; that attorneys' fees and costs awarded to the Tort Claimants are not covered under the Subject Policies; and that any punitive damages that may be awarded to the Tort Claimants are not covered under the Subject Policies.

18. After extensive negotiations, and subject to the approval of this Court, the Trustee has agreed to the Settlement Agreement with the Settling Insurers, whereby the Settling Insurers agreed to pay $4,000,000 ("Settlement Amount") in full and final settlement of all liabilities under and arising out of the Subject Policies, and in consideration of the sale of the Subject Policies to the Settling Insurers free and clear of any and all interests of any person. Upon the Court's entry of an approving order, which has become final and unappealable, the Settlement Agreement will create the $3,600,000 will be paid to the Estate to create a common Claims Fund and, among other things, will be available to pay eligible Tort Claims. The Settlement also creates a fund of $400,000 to pay administration costs.

19. The Compromise Motion establishes certain procedures (the "Procedures") which include a mechanism whereby the Trustee will employ a "Claims Evaluator" to evaluate the Tort Claims. The Trustee will seek to employ the Claims Evaluator to (i) evaluate proofs of claims filed by the Tort Claimants; and (ii) advise and assist the Trustee regarding recommended

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

DM1\14363779.1

payments for such claims.

20. In addition to the Subject Policies, the Trustee is negotiating with other insurers other possible settlement and buyback options, which would, if successful, provide additional funds to Tort Claimants.

21. The Litigation is set for a pretrial conference on August 24, 2023, and has a firm trial setting of September 5, 2023. Absent a restraining order, the Litigation will proceed to trial on September 5, 2023.

22. The damages alleged by the Defendants are significant. The damages include loss of life and organ failure. There are multiple claims for damages which, if proven, would likely exceed the amount of policy limits of any one applicable Subject Policy.

23. If a verdict against the Consolidated Debtors is reached in the Litigation, then some or all of the Defendants in this action would seek to recover from the Subject Policies.

24. If the Defendants were allowed to proceed with the Litigation and attempt to satisfy a judgment from the Subject Policies, the Consolidated Debtors' coverage would likely be exhausted, nullifying the Settlement Agreement, and leaving future Tort Claimants with no recovery.

25. The Trustee also understands that some or all of the Defendants have served offers of judgment to one or more of the Consolidated Debtors, which can only be accepted within a limited timeframe before they expire.

26. Accordingly, the Trustee seeks a Temporary Restraining Order, enjoining the prosecution of the Litigation by the Defendants until a ruling is obtained on the Motion to Approve Compromise.

### IV. LEGAL ARGUMENT

**A.  The Court May Enter a Temporary Restraining Order.**

A court may issue a temporary restraining order pursuant to Federal Rules of Civil Procedure 65(b), made applicable here by Bankruptcy Rule 7065, if it determines: (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably

-9-

DM1\14363779.1

prevail on the merits; (3) the balance of potential harm favors the moving party; and depending on the nature of the case, (4) the public interest favors granting relief. *Int'l Jensen v. Metrosound U.S.A.*, 4 F.3d 819, 822 (9th Cir. 1993). Moreover, "the moving party may meet its burden by demonstrating either: (1) a combination of probable success on the merits and the possibility of irreparable injury if relief is not granted; or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor." *Id.* The purpose of a temporary restraining order is to maintain and preserve the status quo and ". . . to preserve the relative positions of the parties until a trial on the merits may be held." *See, e.g. University of Texas v. Cameenisch,* 451 U.S. 390, 395 (1981).

Section 105 of the Bankruptcy Code grants the Court the power to "issue any order, process of judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105 of the Bankruptcy Code "contemplates injunctive relief in precisely those instances where parties are pursuing actions pending in other courts that threaten the integrity of a bankrupt's estate." *In re Canter*, 299 F.3d 1150 (9th Cir. 2002).

In this case, as previously described, a Temporary Restraining Order is necessary to prevent entry of a judgment in the State Court which will dissipate the assets of the Estate and exhaust the Consolidated Debtor's coverage under the Subject Policies. Accordingly, the Trustee submits that the relief requested herein is appropriate under the facts of this case.

> i.   *Strong Likelihood of Success on the Merits*

The Court is not required to determine whether the Trustee will succeed on the merits of his case, but is only required to determine whether there is a strong *likelihood* of success on the cause of action. *In re Rinard*, 451 B.R. 12 (Bankr. C.D. Cal. 2011). Here, the Trustee has a strong likelihood of success on the merits. There is no serious question that the Consolidated Debtors' insurance coverage is an asset of the Estate. *In re Dow Corning Corp.,* 198 B.R. 214, 244 (Bankr. E.D. Mich. 1996) (citing *Homsy v. Floyd* (*In re Vitek, Inc.*), 51 F.3d 530, 535 (5th Cir.1995) ("There is no dispute that a debtor's interest in its insurance policies is property of the estate"). The type of sale of the Subject Policies and channeling injunction contemplated by the

-10-
DM1\14363779.1

Compromise Motion has been widely accepted throughout the country.  E.g. *In re Sunland, Inc.*, No. 13-13301-TR7, 2014 WL 7011747 (Bankr. D.N.M. Dec. 11, 2014); *In re Reilly-Benton Company, Inc.*, Dkt No. 445 (Bankr. ED LA Apr. 25, 2023); and *In re Peanut Corp. of Am.*, No. 09-60452, 2009 WL 8757732 (Bankr. W.D. Va. Oct. 2, 2009).  As set forth in the Compromise Motion, incorporated herein by reference, all necessary factors are met with respect to approval of the Settlement Agreement and for approval of a sale under Section 363.  Accordingly, the Trustee submits that this factor is satisfied.

        ii.        *Possibility of Irreparable Injury*

The Ninth Circuit has described the test for a preliminary injunction as a sliding scale. *United States v. Odessa Union Warehouse Co-op.,* 833 F.2d 172, 174 (9th Cir.1987).  As the probability of success on the merits increases, the requirement to show immediate and irreparable injury decreases.  *In re Palmer*, 167 B.R. 579, 587 (Bankr. D. Ariz. 1994).  Traditionally, dissipation of assets has been a basis for issuance of an injunction.  *See e.g. FDIC v. Garner,* 125 F.3d 1272, 1279–80 (9th Cir.1997) (giving "substantial deference" to lower court's finding that there was "at least a possibility" of dissipation of assets absent an asset-freezing injunction, and consequently concluding that the possibility of irreparable injury had been adequately demonstrated); *see also Janvey v. Alguire,* 647 F.3d 585, 600 (5th Cir.2011) (holding that "dissipation of assets ... would impair the court's ability to grant an effective remedy"); *see also In re OGA Charters, LLC*, 554 B.R. 415, 426 'Bankr. S.D. Tex. 2016) (preliminary injunction to enjoin settlements by an Insurance Company, which would dissipate the assets of the estate before the Court could conduct a hearing to determine whether to issue an order for relief).

Here, it is well established that if a TRO is not issued, and the Litigation is not enjoined, the Estate will suffer irreparable harm.  The proceeds from the Subject Policies are the single largest asset of the Estate and the best means by which to pay the Tort Claimants.  Allowing the Litigation to proceed will cause the insurance proceeds available under the Subject Policies to be dissipated, and the principal asset of the Estate will be hopelessly lost.  The Trustee will not be able to consummate the Settlement Agreement, and will not be able to provide a return to those

-11-

DM1\14363779.1

Tort Claimants who had the misfortune of not prosecuting their cases fast enough to be first in line. If this Court does not enjoin the Litigation during the period until an order is entered disposing of the Compromise Motion, it is clear that many creditors will likely not receive any compensation for their serious injury or death, while others receive substantial sums. Recovery of these funds is highly problematic once those funds are disbursed. Consequently, the Trustee has clearly shown substantial harm and irreparable injury.

   *iii.*  *The Balance of Hardships Favors the Trustee*

The balance of hardships favors the Trustee. Failing to enjoin continued prosecution of the Litigation will harm the Estate and eviscerate the Settlement Agreement and virtually guarantee that most Tort Claimants receive no recovery from the Consolidated Debtors. On the other hand, temporarily enjoining the Litigation to ensure an equitable recovery for all Tort Claimants will cause comparatively less harm to the Defendants. Further, a temporary restraining order causes no harm to the Defendants because such an order would act to preserve the status quo subject to establishing a right for certain of the Defendants to a share of this proposed common fund. Accordingly, this factor weighs in favor of the issuance of a temporary restraining order.

   *iv.*  *Advancement of the Public Interest*

This element is *prima facie* established where it is shown that a common fund is available to pay personal injury claims and a temporary restraining order is required to preserve that fund for a fair and equitable distribution. The "race to the courthouse" is disfavored by public policy, , which favors a fair and equitable distribution scheme. Therefore, this factor weighs in favor of the issuance of a temporary restraining order.

As all four elements are met, the issuance of a temporary restraining order is proper. Without a temporary restraining order to enjoin the Litigation, the Defendants will destroy the *status quo* of the Consolidated Debtor's assets, and the remaining Tort Claimants will have no adequate remedy to enforce the Congressional and Supreme Court policy of fair and equitable treatment. A temporary restraining order is necessary to protect this Court's jurisdiction over the

-12-

Consolidated Debtor's assets, and to allow this Court sufficient time to make the determinations required. Accordingly, the Trustee requests that this Court issue a temporary restraining order enjoining the Defendants, and each of them, from continued prosecution of the Litigation until this Court rules upon the Compromise Motion.

## V. CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court enter an order: (i) granting the Motion in its entirety; (ii) enjoining the Defendants from continued prosecution of the Litigation against the Settling Insurers until the entry of a final, non-appealable order granting or denying the Compromise Motion; and (iii) for such other and further relief as is just and proper.

Dated this 4th day of August, 2023.

**HOUMAND LAW FIRM, LTD.**

By: /s/ Bradley G. Sims
Jacob L. Houmand, Esq. (NV Bar No. 12781)
Bradley G. Sims, Esq. (NV Bar No. 11713)
9205 West Russell Road, Building 3, Suite 240
Las Vegas, NV 89148
Telephone:   702/720-3370
Facsimile:    702/720-3371

*Counsel for Ryan A. Andersen, Chapter 7 Trustee*

-13-

DM1\14363779.1